VICTORIA PHALEN, as Administratrix of the Estate of JOHN PHALEN, Deceased, Respondent, v. WALTER S. RAE, Defendant, and NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*Negligence — unloading car on railroad siding — when employee thrown under passing engine not free from contributory negligence.*

The evidence examined, in an action to recover for the death of plaintiff's intestate, who, while unloading timber from a car upon a siding track of defendant, was thrown under one of its engines

through the movement of a plank which had been placed crosswise of the car on which he was working and projected beyond its side toward the main track and so near it that it was struck by an engine in passing, and *held* that the intestate was, as a matter of law, not free from negligence.

*Phalen* v. *Rae,* 169 App. Div. 903, reversed.

(Argued October 31, 1916; decided December 28, 1916.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 6, 1915, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William L. Visscher* for appellant. Intestate was guilty of contributory negligence as matter of law. (*Rega* v. *N. Y. C. & H. R. R. R. Co.,* 164 App. Div. 433: *Hogan* v. *N. Y. C. & H. R. R. R. Co.,* 208 N. Y. 445; *Wheeler* v. *Sundstrom & Stratton Co.,* 143 App. Div. 499; *Conway* v. *Naylon,* 170 App. Div. 230; *Rock* v. *N. Y. C. & H. R. R. R. Co.,* 212 N. Y. 112; *Mane* v. *Erie R. R. Co.,* 198 N. Y. 221.)

*William H. Murray* and *John F. Murray* for respondent. It was for defendant to prove contributory negligence. The defendant entirely failed to prove plaintiff's intestate was negligent, and as a question of fact the jury found that plaintiff's intestate was not negligent. (*Stackus* v. *N. Y. C. & H. R. R. R. Co.,* 79 N. Y. 464; *Greany* v. *L. I. R. R. Co.,* 101 N. Y. 419; *Stinson* v. *New York C. R. R. Co.,* 32 N. Y. 333; *Dorr* v. *L. V. R. R. Co.,* 211 N. Y. 369; *Baker* v. *N. Y., N. H. & H. R. R. Co.,* 28 App. Div. 316; *Clemence* v. *City of Auburn,* 66 N. Y. 334; *Francis* v. *N. Y. Steam Co.,* 114 N. Y. 381; *Hassan* v. *N. E. R. R. Co.,* 34 App. Div. 71; *Tucker* v. *Buffalo Railway Co.,* 53 App. Div. 571; *Brown* v. *N. Y. C. & H. R. R. R. Co.,* 42 App. Div. 548.)

COLLIN, J.   The action as to the defendant, The New York Central and Hudson River Railroad Company, is at common law to recover the damages for its alleged negligence, causing the death of plaintiff's intestate.   He, as the employee of Walter S. Rae, was engaged in unloading timber from a car standing upon a siding track of the defendant.   A plank extended crosswise of the car and beyond its side toward and so near to a main track of the defendant that it was struck by an engine passing upon the main track and moved in such a manner that it caused the intestate to be thrown under the passing engine.   The jury upon the submission to them of the questions as to whether or not the defendant was negligent and the intestate free from negligence returned a verdict for the plaintiff.   We decide that the intestate was, as a matter of law, not free from negligence.

The jury might reasonably have found as facts most favorable to the plaintiff upon the question as to the contributory negligence of the intestate.   He was an employee of Walter S. Rae, whose business it was to unload the car.   At eight o'clock in the forenoon of January 23, 1914, the date of the transaction, he with two other employees of Rae began to unload the car.   The car was a gondola coal car, having unremovable sides and ends about three feet high.   The timbers before the unloading began were within the sides of the car and upright stakes along and higher than the sides of the car.   The siding track upon which the car stood extended easterly and westerly.   South of it was a roadway upon which the timbers were to be placed in the unloading, and north of it was the east-bound or southern track of the main tracks of the defendant's railroad.   In unloading, the stakes on the southern side of the car were removed and the timbers above the permanent sides of the car were rolled or thrown off the southern side.   In removing a timber which was below those sides the west end of it was raised by a bar or cant-hook, and as raised from time to

1916.]                    Opinion, per COLLIN, J.          [219 N. Y.]

time by different holds of those tools was supported in the position to which it had been raised by blocks placed under it. When the end was so raised that its under side was sufficiently above the sides of the car a plank was shoved under it crosswise of the car, so that one end of the plank rested on the top of the north side and the other end upon the top of the south side of the car. The end of the timber was then raised higher and higher, and as raised the plank would be shoved along upon the top of the car sides towards and to the center of the timber, which, then balancing, would be rolled off the car. In such method the unloading was proceeding when the intestate was killed. The two fellow-workmen of the intestate had raised ten or fourteen inches from the floor of the car the end of a timber lying on the south side of the car and the intestate had placed under it as raised the blocks. The two men were standing at the southwest part of the car facing the east, getting ready to make another lift of the timber. The intestate at an instant just prior to the accident was sitting upon the plank which was to be placed under the timber's end when sufficiently raised. The plank was near the center of the length and was crosswise of the car. Its southern end was within the car and lower than the top of the car's north side upon which the plank rested. Its northern end extended beyond the car's north side three feet or more. The intestate was sitting upon it within the car facing the southwest and the standing men. As an engine drawing sixty loaded coal cars came upon the east-bound track and was within about fifteen feet of the plank, the intestate arose and moved as if to pull the plank in out of its way. The engine hit it and it so swung that the intestate was knocked out of the car and underneath the engine. There was no evidence as to who so placed the plank or as to who last used it.

The day was clear and cold. The occurrence was between ten and eleven o'clock in the forenoon. The

plank was three inches thick and eight inches wide. The distance between the northern side of the car which was being unloaded and the southern side of the engine or a car of the passing train was thirty-one inches. The intestate had an unobstructed view to the west, the direction from which the engine came, for about one-half of a mile. The speed of the train did not exceed the rate of two miles an hour. It was not on the regular schedule of trains. There was no evidence that the intestate had knowledge of the schedule. At least two trains had passed on this east-bound main track while the intestate was engaged in unloading the car. Within the distance of four hundred feet west of the plank the engineer gave several blasts of the whistle. The intestate was thirty-eight years old, an assistant foreman and experienced in bridge building and loading upon and unloading from cars the timbers. Two or three minutes had elapsed since the intestate had last blocked the timber. Five minutes had elapsed since the unloading of the last preceding timber. The work in no way or at no time required that the end of the plank should extend beyond the north side of the car more than a few inches.

The evidence here discloses all the acts of the intestate. Ordinary care and observation would have informed him that he was in proximity with the tracks of the railroad and that trains passed upon them. He could not have been ignorant of the perils common and natural to the existing conditions. There is no evidence which justified or excused him in being oblivious or regardless of those perils. Slight care and attention would have informed him of the protrusion of the plank beyond the north side of the car, of the extent of the protrusion and of the certainty that it would be hit by a passing engine or car. Slight thoughtfulness and watchfulness would have informed him that the engine was approaching. He either did not see or had forgotten or was indifferent to the protrusion of the plank, or did not see or was indif-

ferent to the approaching train, or was inattentive to the conditions as an entirety. Under either hypothesis, he was careless and negligent. The trial justice properly held in the charge to the jury that if the injury was attributable to the mistaken estimate of the intestate of the distance the plank extended out over the track, then the plaintiff could not recover against this defendant. To permit the jury to find under the evidence here that the negligence of the intestate did not contribute to his injury is to hold, as a matter of law, that he was not under the duty to use any care and attention in behalf of his safety. The law does not so rule.

The judgment should be reversed and a new trial granted, costs to abide the event.

WILLARD BARTLETT, Ch. J., HISCOCK and CHASE, JJ., concur; HOGAN, CARDOZO and POUND, JJ., dissent.

Judgment reversed, etc.